The next case today is Thomas Franchini v. Investors Business Daily, Appeal Number 191389, Attorney Pierce. Russell Pierce, Jr. I'm here on behalf of the defendant, Appellant Investors Business Daily, and Your Honor, may I reserve two minutes for rebuttal? Yes, you may. Okay, thank you. And I also apologize for some reason, despite the testing we were able to do this last week, I was unable to connect by video. This matter presents an interlocutory appeal from the district court's denial of the application of the main anti-SLAPP statute. As an interlocutory appeal, we rely upon the collateral order construction or exception to the final decision rule following this court's precedent in the Godin v. Shenks case, which allowed an immediate appeal from the district court's denial of a motion to dismiss seeking anti-SLAPP relief. The appeal is, in one nuance, slightly different than the order appealed in Godin. The Godin decision deferred to another day the question of whether an order addressed to the merits of a ruling under the anti-SLAPP statute is immediately appealable. We contend that this order is still on the spectrum of orders that would fall within the collateral order doctrine, because the district court's decision here was in essence that this statute does not apply at all to media publishers, be it newspapers or broadcasters or entities in the business of publishing statements at all, even when those statements are protected statements under the statute. Counsel, given that you have some real-time constraints, if we assume that this is a proper interlocutory appeal, the second part of your argument is that the district court was simply wrong on its decision that the anti-SLAPP statute did not apply here. The district court relied very heavily and quoted from the main law court decision in Gaudet v. Mainly Media. Can you tell us why you think the district court did not read Gaudet properly? Yes, Your Honor. The Gaudet Mainly Media holding, we contend, does not stand for the principle that the main anti-SLAPP statute never applies to broadcasters or media defendants when those defendants are providing a forum to a citizen to make statements that are covered by the statute. For example, specifically, the Mainly Media court stated that when a party uses the newspaper to broadcast the party's own petitioning activities, then that would be covered by the statute. That would be a protected activity. In addition to what Judge Lynch has said, I would like to read to you specifically the issue decided by the Gaudet court where it says, quote, a newspaper's failure to establish petitioning activity on its own behalf as fatal to any claim of the anti-SLAPP statute's protection. Why does that decide this case, as to this issue? The other aspect of the Mainly Media holding is the court went on to say, or the party seeking to invoke the statute is a party that used the newspaper to broadcast the party's own petitioning activities, and the Mainly Media court had referenced, in fact, two prior decisions in Maine, the Schelling decision and the Maeta decision that involved letters to the editor. To protect the letter writer? Not the paper? That's right. Our position is that the Mainly Media holding does not stand for the proposition that only the letter writer can invoke the statute, or the newspaper has to rely on the letter writer being joined as a defendant to raise the statute. A letter to the editor does not really have any inherent meaning or value unless it is published by the newspaper. So the Mainly Media decision must mean that if the letter writer is protected by the statute, the media outlet that provides the forum for that speech is also protected. Otherwise, it would not be necessary for the Mainly Media decision to have added that additional space for application of the statute. Here, we have the added complication that the letter writer, in our case, Ms. Sally Pipes, did, in fact, invoke the statute. She invoked the California statute, but she was joined much later in the case. Her motion to dismiss was granted on personal jurisdiction grounds and on failure of service of process grounds some six months following the court's decision on Investor Business Daily's anti-slap motion. Again, our position is that Maine law should not be read to contemplate that parties can avoid the anti-slap protection altogether by just not naming the letter writer or choosing not to join the letter writer or, in this case, waiting to serve the letter writer with and circumvent the statute. If that's Maine law, then whenever a person, whether it's on a talk show or a radio broadcast or a letter to the editor in printed media, whenever a potential defamation plaintiff takes issue with a statement protected by the statute, the defamation plaintiff would just sue the media outlet and not name the speaker as a defendant. Our position is that that cannot be what the Mainland media holding means. In our reply brief, I do concede we Thank you. We did venture to say that the Mainland media decision could have been, the wording does raise the possibility for plaintiffs like Dr. Francini, in this case, to make this distinction. Here, we don't believe the district court necessarily fell into that distinction. The district court's decision specifically found that whether Pipes was engaging in petitioning activity, the court said, was irrelevant at present because Pipes is not a party invoking the statute. That's the error. It's six months later, it was actually three months later, Pipes did, in fact, invoke the statute or invoke anti-slap protection, along with other basis for motions to dismiss. Our concern is that as an order that denies the investors business daily of any anti-slap protection at all, or certainly Maine anti-slap protection, where the statute in Maine intends to confer substantial rights on the defendant, on the moving party under the statute. In those substantial rights, in this case, the Maine Supreme Judicial Court Law Court has begun to characterize those rights as separate and distinct in the sense that they are an protection from litigation and trial on other aspects of the case. The substantial rights are an entitlement to a decision on the anti-slap protection early in the case on a special motion to dismiss. Massachusetts has a statute that's very similar to Maine's, doesn't it? It does, it does. My second question is, the Supreme Judicial Court of Massachusetts in Fustolo decided pretty much as Maine decided in Gaudet, did it not? I believe it may have, yes. However, the Maine law has these other decisions, the Schelling case and the Maieta case that involve letters to the editor. The Gaudet Mainly Media holding itself does cite to those cases where anti-slap protection did apply. Our only point here is that what the Mainly Media decision was making, and it may be somewhat in divergence from Massachusetts, but the decision meant to say that if the media publisher is providing a forum for the citizen to exercise the petitioning activity or petitioning rights as defined in the statute, then the citizen is entitled to the anti-slap protection as well as the media publisher. There's one other issue I would bring to the court's attention. There's a case pending on petition for writ of Retzlaff v. Van Dyck, case number 19-1272. The briefs were submitted for distribution last week on September 29th, so the petition was filed after our reply brief in this matter. That case petitioned the Supreme Court to apply as the substantive rule of law in federal court under the Texas statute. Counsel, please file a 28-J letter on that, please. Okay, I will, yes. Ten days, and of course notify your opposing counsel. Yes, yes. And on that case, I'm not certain how it necessarily impacts this court's decision, only that the Godin case is central to the petitioner's argument in that matter, which is why I rate it. Thank you. By the way, I see my notes on Schelling are to the effect that it dismissed the claims against the defendant in that case, not the publishing company. That's right. The claims in Schelling were against the letter writer. But again, the inference is that if the media outlet had been joined also, then the statute would apply equally. Well, all right. Thank you. Attorney Belair, if you would unmute your video and audio. Good morning again. Good morning. May I proceed, Your Honor? Yes, please. Okay. If the court has any questions about the issue of the appealability of the order, from what Judge Lynch says, perhaps I simply ought to get on to the heart of the matter concerning the anti-SLAPP statute itself. I'd be happy to answer any questions, but if I have time at the end, I'll just summarize it quickly. With respect to the anti-SLAPP statute itself, Judge Torelli, you mentioned the Schelling case. And the Schelling case made a very interesting point, which is that the anti-SLAPP statute in Maine was designed to protect the activists from, as the Schelling case said, from suits by developers who were trying to caution their That's why the approach that IBD is taking here is flawed. Just as you read directly from the decision in Gaudet, and you stole my thunder, but I'll repeat it, unless a newspaper is petitioning on its own behalf, the newspaper is not exercising its own right to petition. Gaudet focused not on the right, but who is exercising the right. And it went on to say that unless they are presenting their own grievance and their own petition with a request that government redress it, then they're not entitled to the protection. And the way the statute is written is in the disjunctive. First, it deals with newspapers, unless it's applicable to newspaper articles, unless those articles constitute the newspaper petitioning on its own behalf, or the party seeking to invoke the anti-SLAPP statute as a party. As the district court found, this was essentially a news story. This wasn't a petition by anybody. It was a news story, and if we follow to the logical conclusion, the arguments being made by IBD, then any news story that contains defamatory statements is subject to the anti-SLAPP statute. That wasn't the purpose of the statute, and the law court in Maine clearly recognized that there's a distinction between newspapers and those who have views when they are petitioning for redress of grievances. Council, in Gaudet, the news reporter publishing the accounts that he did was found not to be engaged in petitioning activity. In that case, it may very well follow that the newspaper which employed him as a reporter is not. If the reporter is not covered, the newspaper is not. Here, however, we have the independent author who actually specializes in issues of major public concern, which in fact were the subject of all sorts of petitioning activity around the time of this article. She flatly says that she is entitled to the protection of the anti-SLAPP statute. So that is a distinction right there with Gaudet. The district court here never made a decision on that, and said, well, she's no longer a party because there's no jurisdiction and you never served her with process. So your brother says, well, this is a neat way for you to evade the requirements of the statute. You just don't serve the person who is protected and you go after the media outlet which published the article. I don't read Gaudet as saying anything about the circumstances here, much less about the publication's editorial judgment in deciding it would publish this article because it directly affects matters of major public concern, which could reasonably enlist public participation. I thought that both of these prongs were not actually dealt with in Gaudet, and that it may be quite an over-reading of Gaudet to say that that disposes of both of these arguments. Well, Judge Lynch, I inherited this case. It was filed against the author as well, but she hadn't been served by the time I came in. There were motions to dismiss pending. But let me address what you're saying. Judge Torello mentioned the Fostolo case, and that involved a report. Do us a favor. Don't gesture with your hand because when you do, that's what the camera sees. Thank you. Forgive me, Your Honor. The Fostolo case is essentially the same case as we have here, where a reporter said, I'm providing a forum. I cover these people all the time. I'm the messenger. Fostolo rejected that position and said, no matter how much you might consider yourself a messenger or a forum, you are not going to be extended the protections unless you are presenting your own grievances. Okay. May I refer you to Gaudet footnote three? Because the news reports at issue in this appeal factually tied to the facts of that case do not constitute petitioning activity. We need not speculate on when news reporting or editorializing might constitute petitioning activity. So the court expressly limited its decision and basically, I think, precluded the argument that you're just making. Well, Your Honor, I simply don't read it that way. If the Gaudet case, as it says, unless a newspaper is petitioning on its own behalf, it is not exercising its right of petition. That's the key that lets you through the door of the anti-SLAPP statute. So the newspaper gets sued because the editorial writer who it has made a judgment is saying something worth public attention because it will lead to petitioning activity, if not downright be directly petitioning activity. The Supreme Court has said that the First Amendment protects those editorial judgments by publications. And here, the text of the main statute plainly would cover that situation. So I think you're setting up a special rule for the media, which is not supported by the text of the statute. And Gaudet never said anything about that situation. I was going to say, Judge Lynch, that Gaudet did say, and the district court in this case said, the newspaper may have had its own views, but it didn't articulate them. It didn't present any grievance of its own. And both Gaudet and the district court focused on the nature of the petitioning activity. And here there was one. This was not an editorial. It was a news story. I was going to ask if you considered it an op-ed. In other words, clearly if you editorialize a new petition, you're entitled to protection, right? You're editorializing and taking a position and asking for change. You'd agree that that's covered, right? If it were an op-ed in which they were presenting their own grievance, yes. But this was a news story. It's the district court found. So you would say it was, but if something's an op-ed, I understand news story isn't covered. Editorial probably is. We were looking for cases across America and couldn't find an op-ed kind of situation where they host different points of view. You would say that's closer to a news story? Is that it? What we're dealing with here, Judge Sarris, what we're dealing with here? Five minutes remaining. Yes. Yes. This was a news story. It didn't make any attempt to urge any particular grievance. It didn't recite anything at all. As I say, the district court said if they had any views, as Gaudette said, they didn't make them known. Therefore, it didn't qualify as petitioning activity. And if we were to adopt the rule, if we were to adopt the rule that IBD is suggesting here, what we would have is anytime there's a news story reporting anything about anybody's complaints that aren't that of the newspaper, well, then roll the credits. Anti-SLAPP statutes say you can't sue the newspaper. I don't think that's – that's clearly not what Gaudette had in mind when it said that the anti-SLAPP statute is only applicable to newspaper articles. Not all media. Newspaper articles, unless it's petitioning on its own behalf, and then the parties seek – or another party. That's a different rule for the other party. Can we go back to Judge Sarris's question about op-eds where a publication, IBD, makes an editorial judgment that it wants to present op-eds that present issues of concern that, in fact, Congress has investigated. Indeed, the background of this is a number of malpractice suits against your client on the public record in the federal district court in Maine, which received some coverage. But here, this is part of – the Pipes article presents this as part of a larger problem throughout the United States of adequate medical care and what she calls less-than-competent doctors providing that care to the patients, the veterans in the hospital. And as a subject of major concern. So, the newspaper makes a decision. It is going to present this as part of its public mission. It does not itself editorialize. It chooses instead to permit op-ed page pieces. You're saying that gets no protection because it's a media – pardon me – newspaper or publication like a newspaper? Not at all, Judge Lynch. Not at all. IBD has all of the protections that all of the co-defendant media outlets had in this case, but only IBD made this anti-SLAPP motion. The First Amendment – they have all sorts of defenses under the libel law. They're free to pursue them. No, no, no. The question is the anti-SLAPP statute text. Yes. All right. So, what in the text says that media who publish any written or oral statement are denied the protection of that statute? Well, that's the Gaudette case to which under the Erie R. Dawkins rule, so forth and so on. Okay. We're going a little bit in circles at this point. Thank you. Oh, I wanted to ask one other question. Earlier in your argument, you seemed to indicate that it had to be a personal grievance of the person making the statement. Are you really saying that? Well, I think the cases say in the sense that if the newspaper wanted to take a position, we are offended. We are appalled. No, no, no. Could you answer my question? I'm sorry. Unless it is a personal grievance that the statement is about, this statute doesn't apply. Is that your position? No, no. It is my position that to make it personal, they have to take a position. Okay. Thank you. Thank you, Judge. There's something that I've been trying to find, and maybe you can help me with. Does the district court make a finding of fact that this was a newspaper reporting a news item or not? Absolutely, absolutely, Judge. It's in the... Now that you've asked me for it, I'm not going to be able to find it. But I don't think that's in your contention. That's what the district court found. This was essentially a news story. Well, I can't find that it made a finding. Judge, I have it. It's at Joint Appendix 17 and 5. How is it? Yes, go ahead. How does it read? It says the district court reached the same conclusion. And this is the district court. The law clerk concluded that the newspaper was documenting current events and did not express its own views, I'm quoting, as to how the government should address these events. It was not engaging. The article at issue is essentially a news report recounting recent failings at the VA and does not articulate any of IBD's views. Thank you. I think that's what you were looking for. That's what I wanted. Oh, yeah. Thank you. Thank you, Judge. Are you finished? Unless there are any questions, yes. Except except this, except this with respect to the my time is probably gone. But with but with respect to this, I'll be round up, OK? I'll try to do it in one sentence, except except for the brief with respect to the appeal ability or not of this, this collateral order, which we say it doesn't qualify for. I rest on the brief. But we seem to be way beyond that. Thank you. Thank you. We have two minutes of rebuttal. Thank you. So a few points to reemphasize. Yes, that was the district court's finding. However, we contend that the emphasis or the focus, the tenor of that finding was the court's finding that the article did not articulate any of investor business dailies views, but the court did not address and in fact characterized as irrelevant. Our primary point that it was Sally Pipes who was authoring and publishing an op ed. The statute, the main anti-slap statute in its plain text contains nothing of this news media, non-media distinction. Sounds to me like you're challenging a final fact, which you have a pretty high hurdle to come in. I don't know if you have done that. Clearly erroneous. There is no other way to read the Sally Pipes declaration and the op ed itself as anything other than an op ed. That was the evidence before the court and if we expand on this media, non-media distinction, it creates all kinds of issues. In addition to a plaintiff's decision to just join the media defendant and not join the speaker, you could also imagine situations where a broadcast company or a podcast is inviting citizens to engage in a debate. There are a number of individuals or entities involved in the actual publication, the making of the statement, who should be entitled to anti-slap protection if the statement is protected. You could have copy editors or producers or a host of individuals who contribute to the publication of the statement. The text of the statute does not make any of those distinctions, so we would ask that this court vacate that portion of the district court's order denying anti-slap protection in this case. Thank you, counsel. Thank you. Thank you. That concludes argument in this case. Thank you. That concludes argument in this case. Attorney Pierce and Attorney Belair, you should disconnect from the hearing at this time.